## Wilson v. Schmidt

*Jay R. Rose,* for petitioners.
*Sidney L. Kravitz,* for purchaser-respondent.

WILLIAMS, P. J., July 16, 1973.—Petitioners seek, by declaratory judgment, a decree that certain building restrictions contained in deeds of owners of lots

in a land development known as "Tafton Cove-Wilson-Hill Development, Palmyra Twp., Pike Co., Pa." do not bind lands presently owned by them, of which the land development was formerly a part.

Petitioners owned a tract of land in Palmyra Township containing 633 acres. Out of this larger tract they set apart 80 acres which comprise the aforesaid lot development.

Petitioners have contracted to sell 53.32 acres of the remainder of the tract to the Wallenpaupack School District, and conditions of the contract are that the title be free and clear of any encumbrances arising out of the aforesaid restrictions and be insurable by a reputable title company.

There are more than 100 lot owners in the development. Two, Chester Krulikowski et ux., and Orville E. Rose, have written letters objecting to the proceeding. They have not entered an appearance and did not appear, after notice, at the argument held July 10, 1973. A title company has refused to insure title against the restrictions. Lots in the development may only be used for residential purposes. Use as a site for an educational building is specifically restricted. Helen Majeski, a lot owner, filed preliminary objections. However, these preliminary objections have been withdrawn, as well as her appearance, with prejudice. Petitioners have pleaded that they never intended the remainder of their lands to be bound by the restrictions.

No answer has been filed. All well-pleaded facts must be taken to be true. There is no factual dispute. The two issues which require determination are:

1. Is a petition for a declaratory judgment the proper remedy to be employed?

2. Do the restrictions in the deeds to owners of lots in the Tafton Cove—Wilson-Hill Development bind

the remainder of the larger tract of which the lots were a part?

## Is a Declaratory Judgment the Proper Remedy?

The purpose of the legislature in enacting the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq., is as stated in the case of Lakeland Joint School District Authority v. Scott Township School District, 414 Pa. 451, 461 (1964):

"In the enactment of the Uniform Declaratory Judgments Act, supra, the legislature unequivocally declared the purpose of the Act (§12, 12 PS §842) '. . . to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [the statute] is to be liberally construed and administered.' "

While a court may not give an advisory opinion, and the act may only be invoked where an actual controversy exists, we find that the undisputed facts show the existence of an actual controversy.

Two lot owners have expressed, in writing, their objection to the relief sought. There is a present danger that they may litigate the issues. This places both the petitioners and the school district in a position of uncertainty and insecurity. Moreover, if the school district should refuse to fulfill its contract on the grounds that the title was encumbered by the restrictions, litigation to enforce the contract could well follow. Since the enforceability of the contract would require a determination of the rights of the lot owners, they would have to be brought on the record as parties to the litigation. See Hoffeditz et al. v. Bosserman et al, 282 Pa. 570, 574 (1925), where the court said:

"We have said many times that, 'A court should never undertake to declare title to real estate good

and marketable unless all the parties in interest are present on the record.' "

With more than 100 lot owners involved, this would be a tedious task. Moreover, since all the lot owners have been served in this proceeding, it is far more practical and time-saving to dispose of the issue before us in the present proceeding. In addition, the school district wants to proceed with its plans to construct an educational building at a cost of $6,000,000. The present danger that it may be prohibited from so doing if the proposed site is restricted against such use, places it in an unsafe and insecure position. The fact that the title company will not insure title against the restrictions adds to the uncertainty and insecurity of the situation. It is our opinion that relief by a declaratory judgment provides the only efficient and expedient method of resolving the issue before us. For cases in which the Supreme Court has interpreted building restrictions in a declaratory judgment proceeding, see Baederwood, Inc. v. Moyer, 370 Pa. 35 (1952); Congregational Conference Appeal, 352 Pa. 470 (1945), and McCandless v. Burns, 377 Pa. 18 (1954).

### Do the Building Restrictions Bind the Remainder of Petitioners' Lands?

The principles of law which must guide us in resolving this issue are set forth in the opinion of the Supreme Court in Witt v. Steinwehr Development Corporation, 400 Pa. 609 (1960), where the court dealt with an issue identical to the one before us. The court said:

"The legal principles germane to this issue are established beyond controversy. Restrictive building convenants are not favored in the law. They are strictly construed and every doubt is resolved against

the existence of the restriction: Brown (et al, Aplnts.) v. Levin et al, 295 Pa. 530, 145 Atl. 593 (1929); Sandyford Pk. C. Assn. v. Lunnemann, 396 Pa. 537, 152 A. 2d 898 (1959). Restrictions may arise: (1) by way of an express convenant; (2) by implication; (3) from language of the deeds; (4) from the conduct of the parties indicating their existence: Baederwood, Inc. v. Moyer, 370 Pa. 35, 87 A. 2d 246 (1952). They are not to be extended by implication unless the parties clearly understand and intend: Rohrer v. Trafford Real Estate Co., 259 Pa. 297, 102 Atl. 1050 (1918); Baederwood, Inc. v. Moyer, supra. The burden of proof, needless to say, is upon the parties claiming their existence."

Here, as in Witt, supra, there is no express covenant, restrictive of the use sought of the land. There is no language in the deeds to the owners of the lots in the Tafton Cove—Wilson-Hill Development which may be construed to give rise to such a restriction by implication. Petitioners allege that they never intended the remainder of their lands to be restricted, and no conduct on their part has been shown to prove a contrary intention. Moreover, as in Witt, supra, the restrictions in the deeds to the lot owners are limited "as to said lots of land hereby conveyed."

It is our conclusion that the binding effect of the restrictions is limited to the lots which comprise the "Tafton Cove—Wilson-Hill Development" and do not extend to bind or affect the remainder of petitioners' land, and specifically do not bind the 53.32 acres of land which the Wallenpaupack School District has contracted to purchase from the petitioners.

### DECREE NISI

And now, July 16, 1973, it is ordered, adjudged and decreed:

1. That the restrictions contained in deeds to pur-

chasers of lots in a lot development titled, "Tafton Cove—Wilson-Hill Development, Palmyra Twp., Pike Co., Pa., recorded on March 21, 1972, in the Office of the Recorder of Deeds of Pike County, Pa., in Plat Book 9 at Page 142 are limited in effect and bind only the lots which comprise the said lot development, consisting of 80 acres, more or less.

2. That the restrictions do not bind the lands situate in Palmyra Township, Pike County, Pa., which Edward T. Wilson et ux., Robert D. Hill et ux., Gerald Decker et ux., Robert Deane, et ux., Charles A. Gilette et ux., and S.M.L. Corporation, by agreement dated December 31, 1971, contracted to sell the Wallenpaupack Area School District. Said lands are fully described in Exhibit "A" of the petition for declaratory judgment.

3. That the restrictions do not affect or bind any portion of the remainder of the larger tract, of which the said Tafton Cove—Wilson-Hill Development was originally a part.

The prothonotary shall enter this decree nisi, and if no objections are filed within 20 days, this decree nisi shall become a final decree as of course.